IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**STEPHEN N.,**[1]

   Plaintiff,           Civ. No. 6:18-cv-01491-AA

 v.               **OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,

   Defendant.

---

AIKEN, District Judge:

Plaintiff Stephen N. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On May 27, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning on September 6, 1989, which was later amended to June 30, 2013. Tr. 18. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 18, 2017. *Id.* On August 28, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 33. On June 8,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2018 and had not engaged in substantial gainful activity since the amended alleged onset date of June 30, 2013. Tr. 20.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments through the date last insured: social anxiety disorder, with panic attacks; unspecified neurodevelopmental disorder; unspecified neurocognitive disorder (amnesia, slow processing); attention deficit hyperactivity disorder ("ADHD"); oppositional defiant disorder; dysthymic disorder; post-traumatic stress disorder ("PTSD"); major depression, moderate, non-psychotic; generalized anxiety disorder; and specified learning disorder (reading, mathematics; written expression). Tr. 21. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following additional limitations: Plaintiff is limited to understanding and carrying out simple instructions in a work environment with few workplace changes; he is limited to isolated work, with no general public contact and no more than occasional contact with coworkers and supervisors (supervisor contact should be limited to checking in with Plaintiff at the beginning of his work shift to give him his work assignment and answer questions). Tr. 24.

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. 31. At step five, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as

Battery Stacker, Lumber Sorter, and Cleaner II, Transportation Vehicles. Tr. 32. As a consequence, the ALJ determined that Plaintiff was not disabled. Tr. 33.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony; (2) discounting lay witness evidence; and (3) weighing the medical opinion evidence.

I.   **Subjective Symptom Testimony**

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that he graduated from high school with a modified diploma in 2008. Tr. 44. Plaintiff worked at a fast-food restaurant from 2007 through 2009 where he did prep work, cooking, and served as a cashier and worked, at a minimum, between 30 and 35 hours per week. Tr. 44-46. Plaintiff got the job because his mother was the manager but was fired after his "temper got the best of [him]" and he had confrontations with customers. Tr. 57.

Plaintiff worked at a temp agency from 2009 to 2013. Tr. 46. Plaintiff testified that he had difficulty with the temporary assignments because he is "slow learning" and needed "yes or no answers and they want to give me elaborate answers." Tr. 48-49. Plaintiff testified that he stopped working for the temp agency because "the staff there was crooked" and he believed it was because he asked for accommodations, although they never said as much to Plaintiff. Tr. 49-50. Plaintiff testified that he stopped calling the temp agency for work in 2013 because he was dissatisfied with their practices. Tr. 50. Plaintiff sought work with other temp agencies without success and received unemployment benefits through 2016. Tr. 51-52.

Plaintiff worked at American Floor for a year beginning in either 2015 or 2016, working between 5 and 10 hours per week emptying trash and sweeping the floor before being let go by the business owner. Tr. 52-53. That was Plaintiff's last employment through the date of the hearing. Tr. 54. Plaintiff worked with Vocational Rehab to attempt to find work after leaving American Floor, but without success. Tr. 54, 56-57.

Plaintiff testified that he has a problem with anger, which leads to "explosions," and "huge outbursts of anger." Tr. 57-58. Plaintiff described these as "[v]iolent reactions and me trying to hurt people and yell at people and calling them names." Tr. 58. Plaintiff testified that he had such an outburst when he worked at the fast-food restaurant. *Id.*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 25.

The ALJ noted that Plaintiff's mental issues were "largely long-standing" but he was "able to perform work in the past," including working up to 38 hours per week at a fast-food restaurant

through 2009 and that he continued to work for a temp agency from 2009 until he quit in 2013. Tr. 25-26. Plaintiff worked part-time in construction cleanup for a year, although below the substantial gainful activity level, and claimed unemployment whole looking for all types of work. Tr. 26. "Overall, the claimant's ability to perform a number of jobs leading up to the alleged onset date (which does not appear to correspond to any particular exacerbation of mental symptoms but is simply the date at which his earnings from work were below the substantial gainful level . . .) suggests that his mental symptoms have not been as limiting as alleged and that, in particular, his cognitive, ADHD, and learning issues have not been preclusive of all work." *Id.* This is a valid consideration. *See Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (upholding an ALJ's decision when substantial evidence indicated that the plaintiff's back pain "had remained constant for a number of years" and "had not prevented her from working over that time."). Here, Plaintiff's attorney acknowledged during the hearing that the amended onset date corresponded to the point when Plaintiff's earnings fell below the level of substantial gainful activity. Tr. 42. Plaintiff's girlfriend reported that Plaintiff had "a lot of trouble since he was in grade school" and that she didn't "think since then it's got worse or better." Tr. 250. Plaintiff's own report indicated that he had "had problems since elementary school" and he didn't "remember being able to do much of anything." Tr. 242. The Court concludes that the ALJ reasonably considered the fact that Plaintiff's longstanding impairments had not prevented Plaintiff from working in the past.

The ALJ also considered Plaintiff's daily activities. Tr. 26. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal quotation marks and citation omitted). "Even where those activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113. During a psychological evaluation in December 2014, Plaintiff reported living independently with his partner and that he manages his own clothing and hygiene. Tr. 303. Plaintiff "is the main household cook," and "could follow recipe instructions, but slowly." *Id.* He washes dishes by hand without assistance, sweeps, vacuums, and did laundry "independently and without problems weekly." *Id.* Plaintiff is able to drive and shop independently, although he shops at night to avoid crowds. *Id.* He reported being able to use the internet, use telephones, and send text messages. *Id.* For recreation, Plaintiff reported watching movies and playing video games. *Id.* The ALJ found that this evidence supported a finding that Plaintiff possessed "a mental capacity for work involving simple instructions." Tr. 26. On this record, the Court cannot conclude that the ALJ erred in considering Plaintiff's daily activities.

The ALJ also noted that there was "little evidence of mental health treatment in the record," and that "[w]hen [Plaintiff] did receive treatment he either did not comply with recommendations or discontinued treatment." Tr. 27. An unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment is a valid consideration for an ALJ assessing subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the record supports the ALJ's conclusion. *See* Tr. 334 (September 2015 treatment note "Client abruptly ended services after recapping his primary objective of having a LMP intake which he did not attend and has not responded to correspondence."); Tr. 360 (October 2015 treatment note where Plaintiff reported that he was not taking his anti-depressant medication because he was worried about side effects and was drinking, which he was not supposed to do while on the medication.).

Page 8 – OPINION & ORDER

Plaintiff argues that the ALJ cannot weigh a failure to follow treatment against Plaintiff's testimony when the failure was caused by Plaintiff's mental health impairments. However, the record indicates that Plaintiff's failure to seek or follow treatment was due to factors other than his mental health. This is a valid consideration. *See Molina*, 674 F.3d at 1114 ("Although Molina provided reasons for resisting treatment, there was no medical evidence that Molina's resistance was attributable to her mental impairment rather than her own personal preference, and it was reasonable for the ALJ to conclude that the level or frequency of treatment was inconsistent with the level of complaints." (internal quotation marks and citations omitted, alterations normalized)). On this record, the Court concludes that the ALJ reasonably concluded that Plaintiff's failure to seek or follow through with treatment was due to his personal preference, rather than the effect of his mental impairments.

In sum, the Court concludes that the ALJ gave legally sufficient and supported reasons for discounting Plaintiff's subjective symptom testimony.

## II. Lay Witness Testimony

Plaintiff asserts that the ALJ erred by discounting the lay witness testimony of Plaintiff's girlfriend, Aylisha Boyce. An ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff's significant other Aylisha B. submitted an adult function report in support of Plaintiff's application. Aylisha B. reported that Plaintiff has anger issues around people and that he gets anxious and can't think while in big crowds. Tr. 249. Plaintiff is "slow learning and gets confused and angry because of it." *Id.* Aylisha B. reported that Plaintiff has had difficulties since

grade school and that she did not think that it had improved or worsened since then. Tr. 250. Plaintiff "gets anxious and paranoid that people are out to get him," and gets upset when "others stare." Tr. 252. He shops for groceries late at night, does not pay his own bills, manage a bank account, or count change. *Id.* Plaintiff has difficulty talking, hearing, seeing, remembering, concentrating, understanding, following instructions, and getting along with others. Tr. 254. He can follow simple written instructions with enough time. *Id.*

The ALJ accounted for Aylisha B.'s testimony "to some extent by finding the claimant to have significant mental limitations . . . including social limitations (no general public contact included) and work involving only simple instructions." Tr. 31. However, the ALJ rejected Aylisha B.'s testimony to the extent that it endorsed limitations greater than those identified by the medical experts. *Id.* Errors in assessing lay witness testimony are harmless when the witnesses testimony matches the plaintiff's own testimony and the ALJ rejected the plaintiff's testimony for "well-supported, clear and convincing reasons." *Molina*, 674 F.3d at 1122. Here, the Court concludes that Aylisha B.'s testimony closely mirrors Plaintiff's own and so any error in assessing her testimony would be harmless.

### III.    Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by discounting the opinions of examining psychologist Peter LeBray, Ph.D. and reviewing psychologists Ben Kessler, Psy.D, and Bill Hennings, Ph.D. The Social Security Administration has altered the regulation which govern the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022). This claim was filed on May 27, 2014 and so the older system applies. Tr. 18. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the

opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. LeBray

Dr. Le Brary performed a psychological examination of Plaintiff in April 2015. Tr. 322. Dr. LeBray assessed intellectual function in the low average range. Tr. 325. Dr. LeBray believed that Plaintiff "may fare best with simpler, unspeeded gross motor mental related worklike tasks (stacking, sorting, assembling, packaging)," but that "[j]obs with speeded, fine eye-hand tasks are not advised." Tr. 326. Dr. LeBray assessed major depression, generalized anxiety disorder, social anxiety disorder, ADHD, specific learning disorders related to reading, mathematics, and written expression, as well as an unspecified neurocognitive disorder. Tr. 329. Dr. LeBray recommended that vocational rehabilitation "make services and assistance contingent on engaging in care and compliance." Tr. 330. "Without mental health services and supports in place, his chances of job success and tenure are low due to unattenuated, combined mental health conditions." *Id.* Plaintiff "may fare best with simpler, familiar, non-speeded mental related tasks not requiring close social interaction or literacy demands in a quiet, relaxed, low-key setting with a supportive mentor or supervisor (not overly harsh or critical)." Tr. 331.

The ALJ gave "some weight" to Dr. LeBray's opinion and "largely accounted" for it by limiting Plaintiff to "simple instructions, few workplace changes, isolated work, no public contact,

and no more than occasional coworker/supervisor contact." Tr. 30. "However, to the extent Dr. LeBray indicated [Plaintiff] would be more limited, little weight is accorded to his opinion because it is not consistent with the record as a whole." *Id.* Specifically, the ALJ rejected Dr. LeBray's recommendation that Plaintiff "avoid speeded fine eye-hand tasks," because "the record indicates the claimant enjoys playing video games for extended periods." *Id.* An ALJ may discount assessed limitations that appear inconsistent with the plaintiff's level of activity. *Rollins v. Massarnari*, 261 F.3d 853, 856 (9th Cir. 2001). On this record, the Court cannot conclude that the ALJ erred by considering Plaintiff's daily activities.

The ALJ also noted that Dr. LeBray's report was prepared "for vocational rehabilitation purposes" and he "did not provide specific maximum residual functional capacity limitations," but rather presented them as recommendations. Tr. 29-30. An ALJ does not err when he excludes statements from medical providers which are "neither a diagnosis nor a statement of [the plaintiff's] functional capacity," but are instead a recommended way for the plaintiff to cope with their symptoms. *Valentine v. Comm'r*, 574 F.3d 685, 691-92 (9th Cir. 2009); *see also Brendan J.G. v. Comm'r*, Case No. 6:17-cv-742-SI, 2018 WL 3090200, at *4 (D. Or. June 20, 2018) (finding "the statement that Plaintiff 'would be best working alone,' with a 'supportive supervisor,' and in a 'non-critical setting' was a recommendation, preference, or perhaps a way for Plaintiff to cope with his conditions," and so was reasonably excluded from the RFC).

On this record, the Court concludes that the ALJ did not err in weighing the opinion of Dr. LeBray.

### B. Dr. Kessler and Dr. Hennings

Reviewing psychologist Dr. Kessler opined that Plaintiff was "capable of carrying out simple 1-3 step instructions but not more complex instructions" and was "not capable of

maintaining attention and concentration for extended period," although "he can complete a normal work day/week." Tr. 75, 86. Plaintiff should have no interaction with the general public, "is to work by himself in a work place setting," and "needs a supervisor who will make accommodations as needed." Tr. 75, 86. Vocational guidance was highly recommended. Tr. 87. Reviewing psychologist Dr. Hennings reached a similar opinion, noting that Plaintiff would need "a supervisor who will make re-direct to work activities as needed," and "would be limited to no more than brief work-related interactions with coworkers." Tr. 98, 109.

  The ALJ gave "great weight" to the opinions of Dr. Kessler and Dr. Hennings, finding that their "opinions are generally consistent with the record as a whole." Tr. 29. However, "their opinion that [Plaintiff] is limited to 1-3 step instructions (to the extent this is more restrictive than simple tasks), this is given little weight because it is not consistent with the record as a whole." *Id.* The ALJ noted that Plaintiff is capable of driving and playing video games, which the ALJ interpreted as inconsistent with a limitation to 1-3 step tasks. *Id.* As noted, an ALJ may reject a medical opinion that is inconsistent with the plaintiff's daily activities. *Rollins*, 261 F.3d at 856. The Court concludes that the ALJ reasonably inferred that these activities involved more than one to three step instructions. In addition, two of the possible jobs identified by the ALJ at step five of the sequential analysis involve less than three steps. *See* Dictionary of Occupational Titles ("DOT") 727.687-030, Battery Stacker, *available at* 1991 WL 679666 ("Apply commonsense understanding to carry out simple one- or two-step instructions."); DOT 922.687-074, Lumber Sorter, *available at* 1991 WL 688136 ("Apply commonsense understanding to carry out simple one- or two-step instructions.").

  The ALJ found that their recommendation of a supervisor willing to make accommodations was adequately addressed by the RFC. Tr. 29. The ALJ "is responsible for translating and

incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r*, 807 F.3d 996, 1006 (9th Cir. 2015). The Court concludes that the ALJ reasonably interpreted this limitation into the RFC by limiting Plaintiff to "isolated work, with no general public contact and no more than occasional contact with coworkers and supervisors (supervisor contact should be limited to checking in with the claimant at the beginning of his work shift to give his work assignment and answer questions)." Tr. 24.

The ALJ also gave little weight to their recommendation concerning vocational guidance, noting that it was a recommendations and "somewhat vague." Tr. 29. As previously noted, however, the ALJ is not required to incorporate recommendations into the RFC. *Valentine*, 574 F.3d at 691-92 (9th Cir. 2009).

In sum, the Court concludes that the ALJ gave legally sufficient and supported reasons for the assessment of the opinions of Dr. Kessler and Dr. Hennings.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this     28th     day of February 2023.

 /s/Ann Aiken
ANN AIKEN
United States District Judge